UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 14-59 |
| MALCOLM BOLDEN | SECTION "A" |

### ORDER AND REASONS

Before the Court is a **Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); and the Amendments Imposed by United States Sentencing Commission (Rec. Doc. 705)** ("Motion for Compassionate Release") filed by the *pro se* defendant, Malcolm Bolden. For the following reasons, the motion is denied.

I.   BACKGROUND

In 2012, Malcolm Bolden became involved in a heroin distribution conspiracy.[1] A year later, he sold heroin to Kevin Ryan, who died after injecting Bolden's heroin into his arm.[2] Fast forward another year, to February 7, 2014—Bolden, still associated with the same conspiracy, was arrested after he sold heroin to a confidential informant for the FBI.[3] While Bolden may have joined the conspiracy as a novice drug dealer, in two years' time he progressed to making bulk purchases for street level distribution, handling the "dope" phones for a higher-level dealer, and servicing numerous heroin addicts on a daily basis.[4]

On March 31, 2015, Bolden pled guilty to Count 1 and Count 2 of the indictment that charged him with conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and distribution

---

[1] Rec. Doc. 190, at 1.

[2] *Id.* at 6.

[3] *Id.*

[4] Rec. Doc. 243, ¶¶ 73–75.

of a quantity of heroin resulting in death in violation of 21 U.S.C. § 841(b)(1)(C).[5] The Court then sentenced him to a term of imprisonment totaling 300 months.[6] On September 28, 2020, Bolden filed a Motion for Compassionate Release because of the COVID-19 outbreak, which the Court denied.[7] Bolden now moves the Court again to grant him a compassionate release, this time on the following bases: (i) his young age at the time of the offense; (ii) the length of his sentence; (iii) COVID-19 and other prison conditions; and (iv) his rehabilitation efforts and progress.[8]

## II.  LEGAL STANDARD

Bolden filed his motion for a sentence modification under the First Step Act of 2018 ("First Step Act"). He asks the Court to grant his compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This statute allows for the modification of a term of imprisonment upon a finding that certain extraordinary and compelling reasons warrant a reduction in an inmate's sentence. In its current form, the compassionate release provision provides that:

> (c) Modification of an Imposed Term of Imprisonment — the court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

---

[5] Rec. Doc. 276, at 1.

[6] *Id.* at 2. The Court notes that, because death resulted from one of Bolden's distributions, he faced a mandatory minimum sentence of 240 months and a maximum sentence of life imprisonment. Due to a prior felony drug conviction, he faced a mandatory life sentence if the Government elected to file a recidivist enhancement against him. Accordingly, the parties negotiated a plea agreement wherein the Government agreed not to file the recidivist enhancement, and Bolden agreed to a term of imprisonment of 300 months. *See* Rec. Doc. 714, at 8–9.

[7] Rec. Doc. 581.

[8] Rec. Doc. 705, at 5–23 (young age), 23–35 (long sentence), 34–35 (COVID-19 and other conditions), 35–41 (rehabilitation efforts and progress).

> whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the Bureau of Prisons ("BOP"), the First Step Act amended the statute to allow prisoners to petition the district courts as set forth above. However, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A).

If administrative remedies are sufficiently exhausted, then

> a prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022).

The applicable Sentencing Commission Policy Statement ("Policy Statement") provides that extraordinary and compelling reasons may exist when certain circumstances, alone or in combination, are present. *See* U.S.S.G. § 1B1.13(b) (2023). Those include certain medical conditions of the defendant; the defendant being housed at a facility affected, or at imminent risk

of being infected, by an ongoing outbreak of an infectious disease or a public health emergency; and the defendant's age,[9] family circumstances, status as a victim of abuse, or other reasons that "are similar in gravity." *Id.* § 1B1.13(b)(1)–(5). Additionally,

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* § 1B1.13(b)(6).

Otherwise, "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." *Id.* § 1B1.13(c). But if a defendant can establish that an extraordinary and compelling reason warrants a sentence reduction, "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.* Similarly,

> [p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

*Id.* § 1B1.13(d).

---

[9] Because it is particularly relevant to the analysis in the instant case, the Court notes that, in order for a defendant's age to qualify as an extraordinary and compelling reason under the Policy Statement, the defendant must meet three conditions: (1) be at least 65 years old; (2) be experiencing a serious deterioration in physical or mental health because of the aging process; and (3) have served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(b)(2).

### III.   ANALYSIS

The Government does not dispute that Bolden has exhausted his administrative remedies, so the Court may proceed to consider whether he has established that (i) "extraordinary and compelling reasons" justify the reduction of his sentence, and (ii) his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a).[10] *See Jackson*, 27 F.4th at 1089. Where a prisoner has not sufficiently identified "extraordinary and compelling reasons" justifying his release—like Bolden has failed to do here—a court may deny a motion for compassionate release without reaching the factors outlined in 18 U.S.C. § 3553(a). *Id.* at 1093 n.8.

### i.   **Bolden has not established that an extraordinary and compelling reason justifies his compassionate release.**

A definition of "extraordinary and compelling reasons" does not exist in Section 3582, but the Fifth Circuit provided guidance in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023):

> We understand "extraordinary" to mean "beyond or out of the common order," "remarkable," and synonymous with "singular." *Extraordinary*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d. ed. 1934; 1950) ("WEBSTER'S SECOND"); *see also United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (Katsas, J.) (defining "extraordinary" as "most unusual," "far from common," and "having little or no precedent" (quotation omitted)). "Compelling" is a participle of "compel," which means "to drive or urge with force, or irresistibly," "to force," and "to subjugate." *Compel*, WEBSTER'S SECOND, *supra*, at 544. These terms explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.

*Id.* at 186; *but cf. United States v. Jean*, 108 F.4th 275, 286 (5th Cir. 2024) ("We read *Escajeda* to require that the extraordinary and compelling reasons for compassionate release, as a whole, must be 'unique to the life of the prisoner.'") (petition for rehearing en banc filed Sept. 18, 2024).

---

[10] Rec. Doc. 714, at 5.

As previously stated, Bolden asserts that his compassionate release is justified for the following reasons: (i) his young age at the time of the offense; (ii) the length of his sentence; (iii) COVID-19 and other prison conditions; and (iv) his rehabilitation efforts and progress. The Court addresses each basis in turn.

### a. Age

Bolden presents a two-fold argument that his young age at the time he committed the offenses is an extraordinary and compelling reason justifying his compassionate release. First, he argues that the First Step Act—which was enacted after he became incarcerated—contains a definition of "youth" that entitles him "to numerous protections established by the Supreme Court," including protection "against the imposition of extreme sentences."[11] Second, he argues that his young age and "youthful mind" prevented him from fully appreciating the potential consequences of his action when he committed the offenses.[12]

His first contention—that he is entitled to additional protections by virtue of the First Step Act's definition of "youth"—is incorrect. The definition he cites is contained in Section 608, which is about participation in certain pilot programs, not sentencing. *See* First Step Act of 2018, Pub. L. No. 115-391 § 608(c) (defining "youth" in the context of "A program to pair youth with volunteers from faith-based or community organizations, which may include formerly incarcerated offenders, that have relevant experience or expertise in mentoring, and a willingness to serve as a mentor in such a capacity"); *see also United States v. Jones*, No. 07-143, 2023 WL 3510898 (D.N.J. May

---

[11] Rec. Doc. 705, at 7-10 (citing *Miller v. Alabama*, 567 U.S. 460 (2012) and noting that the *Miller* Court's reasoning should apply to the instant case). The Court notes that *Miller* does not apply to Bolden's circumstances. In *Miller*, the Supreme Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Bolden was not under the age of 18 at the time of his crime and he does not face a life sentence. *See supra*, note 1. Other cases Bolden cites are irrelevant for similar reasons. *See, e.g.*, Rec. Doc. 705, at 8-21 (citing *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 540 U.S. 48 (2010); *Montgomery v. Louisiana*, 577 U.S. 190 (2016)).

[12] *See, e.g.*, Rec. Doc. 705, at 10.

16, 2023) (rejecting argument that Section 608 expanded the age range of defendants who qualify for sentencing as a juvenile); *United States v. Melendez*, 534 F. Supp. 3d 172, 175 (D. Mass 2021) (same); *United States v. Millner*, No. 08-0086, 2024 WL 1678559, at *2 (D. Md. April 18, 2024) (same); *United States v. Johnson*, No. 98-00099, No. 98-00158, 2021 WL 2750609, at *4 n.2 (S.D. Ala. July 1, 2021) (same).

As for his second contention, the Court is unpersuaded for two reasons. *First*, Bolden does not meet the requirements for his age to be considered as an extraordinary and compelling reason under the Policy Statement because (i) he is not 65 years of age or older and (ii) he is not experiencing a serious deterioration in physical or mental health because of the aging process. U.S.S.G. § 1B1.13(b)(2).[13] *Second*, the Court is unconvinced that Bolden's young age (20 years) at the time of the offenses amounts to an "extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186. Bolden contends the Court should consider that, because he was twenty years old at the time of his offenses, "His impulse control and thinking skills were nowhere near fully developed."[14] But he offers no indication that his youth was *not* considered when he received his sentence. To the contrary, the sentencing judge made the following statements at the sentencing hearing:

> I read through your [Presentence Investigation Report]. You've got several things going for you. I've got pages and pages of all types of things that you've done in your life. And, again, I've said this here this morning a few times, that here we are with a perfectly good young person, able-bodied young person, who's standing in front of me in an orange jumpsuit.
>
> And in your case, you probably were the last person on the planet to see Kevin Ryan alive. If my facts are correct, my understanding is that you're probably the last person to see him alive. If you take a

---

[13] *See also supra*, note 9.

[14] Rec. Doc. 705, at 14.

> look at the picture there, that's not a person who ought to have departed the world so young. He's your age.
>
> . . .
>
> Every person who's involved in this case has to accept responsibility, and I hope that you do. Because you're at a young age and you still have opportunities unlike the person in that picture.
>
> . . .
>
> Having carefully considered the presentence investigation report, and all of the competing factors weighing in favor of and against the plea agreement entered by the defendant and the government, the Court finds it appropriate to accept the plea agreement entered into.

(Rec. Doc. 489, Sentencing Hr'g Tr., 17:13–19:8).

So it is clear from the record that Judge Engelhardt considered Bolden's age when imposing his 300-month sentence. But even if the Court opted to reconsider whether Bolden's young age is an extraordinary and compelling reason in light of the cases cited and arguments made in his brief, it would arrive at the same conclusion. Take, for example, *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D. N.Y. 2021), which Bolden offers as an example of a court applying the legal analysis he contends this Court should use.[15]

In *Ramsay*, the defendant—who was 18 years old at the time of the offense—was convicted of murder in aid of racketeering and sentenced to life imprisonment in the early nineties. *Id.* at 408-09. On motion for compassionate release, the presiding judge found that Ramsay's "youth at the time of the offense, his upbringing, and his demonstrated rehabilitation, taken together, are extraordinary circumstances that compel[led] a sentence reduction." *Id.* at 426. In arriving at its decision, the court noted "Ramsay's decision to fire into a crowd has all the hallmarks of adolescent crime: a split-second, hot-headed choice made in the presence of peers." *Id.* at 424. Critically, the

---

[15] *See id.* at 19–21.

court concluded that "Ramsay's youth at the time of the offense *counsels against a life sentence*." *Id.* (emphasis added).

As a threshold matter, the *Ramsay* defendant's sentence was imposed under a mandatory minimum life sentencing regime—a fact that does not exist in the case before the Court. *Id.* As such, the sentencing judge had no choice in the matter. But the more persuasive difference between this case and *Ramsay* is that Bolden's offenses unequivocally did not display the "hallmarks of adolescent crime." *Id.* at 424. Rather, the record makes clear that, by the time of his arrest, Bolden was deliberately buying bulk quantities of heroin for redistribution to individual purchasers.[16] In other words, Bolden's crimes did not occur in a "split-second," he was making calculated business decisions on a daily basis as a member of a sophisticated heroin distribution conspiracy. And one of those business decisions resulted in Kevin Ryan's death.

Accordingly, the Court finds that Bolden's age at the time he committed the offenses—regardless of whether it is viewed individually or in conjunction with his other proposed reasons for compassionate release—does not rise to the level of "extraordinary and compelling" because it was foreseeable at the time of sentencing.[17] *Escajeda*, 58 F.4th at 186; *Jean*, 108 F.4th at 286.

### b. *Length of sentence*

The Policy Statement provides that an unusually long sentence may be considered in determining whether a defendant presents an extraordinary and compelling reason subject to three conditions. *See* U.S.S.G. § 1B1.13(b)(6). First, the defendant must have served at least ten years

---

[16] *See* Rec. Doc. 190, Factual Basis.

[17] Citing *United States v. Rimpson*, No. 20-3467, No. 20-3468, No. 20-3535, 2021 WL 6098440 (7th Cir. Sept. 22, 2021), the Government argues that "[T]he age of an offender at the time of the offense is a factor that is to be considered only by the sentencing judge." Rec. Doc. 714, at 7. The Court expressly declines to adopt this argument for two reasons: first, the compassionate release statute explicitly restricts a district court's discretion by authorizing a reduced term of imprisonment only for extraordinary and compelling reasons (18 U.S.C. § 3582(c)(1)(A)(i)), but does not go so far as to impose the limitation the Government seeks; and second, neither the Fifth Circuit nor the Sentencing Commission have interpreted the statute to impose the limitation the Government seeks.

of the term of imprisonment. *Id.* Second, there must be "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) . . . [such that the] change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* Third, there must also be a "full consideration of the defendant's individualized circumstances." *Id.*

While Bolden has served at least ten years of his term of imprisonment, he has failed to identify and articulate an applicable change in the law that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time his motion was filed.[18] *Id.* Accordingly, the length of his sentence is not "extraordinary and compelling" under the Policy Statement.

Nor does it qualify as "extraordinary and compelling" under the Fifth Circuit's interpretation in *Escajeda*. As established in the Government's brief, Bolden's sentence was not "beyond or out of the common order" as it relates to sentences in other drug trafficking cases in the Eastern District of Louisiana.[19] And the Court struggles to find Bolden's argument "compelling" for the reason that he originally accepted his 300 month sentence in exchange for the Government opting not to file a recidivist enhancement against him—an act which would have caused him to face a mandatory life sentence due to his prior felony drug conviction at the time of his sentencing.[20]

---

[18] As discussed *supra* Section III(i)(a), the definition of "youth" contained in the 2023 amendments to Section 608 of the First Step Act only applies to certain pilot programs, not sentencing. Accordingly, it has no bearing on this case.

[19] Rec. Doc. 714, at 10 (quoting *Escajeda*, 58 F.4th at 186).

[20] *Id.* at 8.

### c. *COVID-19 and other prison conditions*

Bolden next argues that the additional restrictions imposed by COVID-19, as well as the dangers associated with the illness, "constitute extraordinary and compelling circumstances warranting a reduction of this sentence."[21] More specifically, he states that the "severe lockdown measures undertaken by the BOP to control the spread of COVID-19 in prison" have "prevented [him] from seeing family and having any meaningful social contact, and from basic physical movement within the prison."[22]

His reliance on pandemic-related prison lockdowns is neither compelling nor extraordinary because the COVID-19 public health emergency ended on May 11, 2023, and Bolden does not alternatively point to "an ongoing outbreak of infectious disease."[23] U.S.S.G. § 1B1.13(b)(1)(D)(i)–(ii). The Court recognizes that the lockdowns prevented him from seeing family, having meaningful social contact, and from basic physical movement within the prison; but to the extent this hardship continues to confront Bolden, it confronts other inmates, too—and, for that matter, every prisoner in any other prison affected by the steps that were taken or, in the ongoing outbreak of infectious disease, continue to be taken to curb the spread of the virus within prison walls. It is more ordinary than it is extraordinary:

> [T]he conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

---

[21] Rec. Doc. 705, at 3.

[22] *Id.* at 35.

[23] *See* COVID-19 Public Health Emergency, DEP'T HEALTH & HUM. SERVS., http:// www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html (last visited Dec. 5, 2024).

*United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020); *United States v. Iruegas*, No. 18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021) (same).

### d. Rehabilitation efforts and progress

Finally, Bolden seeks compassionate release in light of his rehabilitative efforts in prison.[24] While the Court finds his efforts admirable, his rehabilitation alone is not sufficiently "extraordinary or compelling" to warrant compassionate release. *See United States v. Hughes*, No. 4:18-CR-46(25), 2022 WL 2483720, at *4 (E.D. Tex. July 6, 2022) (collecting cases). Indeed, in advising the Sentencing Commission to define "extraordinary and compelling reasons," Congress provided just one restriction: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "Congress's decision to rule out rehabilitation suggests that rehabilitation is expected, not extraordinary." *United States v. Carrera*, No. 3:14-CR-0367-B-40, 2023 WL 1070609, at *4 (N.D. Tex. Jan. 27, 2023).

### ii. The Section 3553(a) factors do not weigh in favor of a sentence reduction.

Bolden has not identified extraordinary and compelling reasons, so the Court need not reach the factors outlined in 18 U.S.C. § 3553(a). *Jackson*, 27 F.4th at 1093 n.8. But even if the Court were to find his reasons extraordinary and compelling, it would still conclude that compassionate release is not warranted based on consideration of the factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed— (A) to reflect the seriousness of the offense, [or] to promote respect for the law . . . ; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After

---

[24] Rec. Doc. 705, at 6 (citing Rec. Doc. 705-1, Individualized Needs Plan).

considering each of the Section 3553(a) factors, the Court concludes that a sentence reduction would be inappropriate.

Accordingly;

**IT IS ORDERED** that the **Motion for Compassionate Release (Rec. Doc. 705)**, filed by Defendant Malcolm Bolden, is **DENIED**.

December 18, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE
